[Civ. No. 1944. Third Appellate District.—April 14, 1919.]

KARL SPROGIS, Appellant, v. DRURY BUTLER,
Respondent.

[1] NEGLIGENCE — ACTION FOR PERSONAL INJURIES — EXTENT OF IN-
JURIES—FINDINGS—EVIDENCE.—In this action to recover damages
for personal injuries sustained by plaintiff as a result of his colli-
sion, while riding a bicycle, with an automobile driven by the de-
fendant, the findings of the trial court with respect to the extent
of the plaintiff's injuries were justified by the evidence.

APPEAL from a judgment of the Superior Court of Sac-
ramento County. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thomas H. Christiansen for Appellant.

Butler & Swisler for Respondent.

BUCK, P. J., *pro tem.*—This is an action to recover dam-
ages for personal injuries sustained by plaintiff as the result

of his collision, while riding a bicycle, with an automobile driven by the defendant.

The accident occurred in July of 1915 and the case was tried in December of 1916 by the court sitting without a jury. Findings and judgment were given in favor of the plaintiff in the sum of four hundred dollars; but from this judgment the plaintiff has appealed, bringing up all of the testimony under the alternative method.

[1] In its brief plaintiff contends that the findings with respect to the extent of the plaintiff's injuries are not justified by the evidence and that the evidence without substantial conflict shows that plaintiff sustained permanent injuries which will make him a cripple for life; and that he has been and will be in the future prevented from working at his trade as a carpenter; and that consequently the judgment awarded him by the court in the sum of four hundred dollars is wholly inadequate and insignificant and that the court "was biased and prejudiced against the appellant and that as a result thereof he did not have a fair trial."

In this case the not unusual duty was imposed upon the trial judge of making his findings from evidence of a very conflicting character; and the only power that this court has in the premises is to determine whether or not there is in the record any sufficient evidence or any reasonable inferences that may be drawn therefrom to sustain the findings. For under the law of the land the trial tribunal to which the plaintiff chose to submit his case is the sole and exclusive judge of the credibility of the witnesses and of the value and effect of their evidence.

In this case the claimed injuries of the plaintiff were of a subjective nature and depended for proof so entirely upon plaintiff's own testimony and statements that it became specially incumbent upon the trial court thoroughly to test the credibility, accuracy, and good faith of the plaintiff as a witness.

The following is some of the testimony which is sufficient to justify and sustain the findings in this case:

First, in regard to the violence of the collision which plaintiff claims was the cause of his "invisible" injuries. Plaintiff himself testified that while he was riding his bicycle on the public highway, defendant came at the rate of thirty miles per hour in his automobile directly behind him, striking the

bicycle and "throwing me off the wheel and on the front part of his machine. After I was knocked off the wheel I was on the ground between the pavement and the wheel. The left-hand wheel of the front part of the machine caught me in the middle of the back and the machine went about fifteen feet, between ten and fifteen feet before it stopped. The automobile dragged me under the wheel on top of the pavement for a space of ten or fifteen feet. I was lying on my face toward the pavement." On the other hand, three disinterested witnesses on behalf of the defendant testified in substance that the car "did not travel at all after hitting the bicycle. Possibly it moved a foot but not more than that. The plaintiff was not dragged one foot, probably, or I would not call it that. I would say now, he was not dragged at all."

Second, as regards the visible and tangible evidence of the effect of the collision plaintiff testifies: "I was visibly injured up from my wrist to the middle between the shoulder and elbow—torn off the skin part of the flesh like with a scraper about three inches in width." Immediately after the accident appellant, at his own request, was taken to the office of his family physician, who testified as a witness on his behalf at the trial that "he had an abrasion on the right arm, the fore arm, extending from two or three inches above the wrist up to a little above the elbow about two or three inches wide—it looked red and raw, just took off the superficial lesion of the skin, a little deeper cut." Also, "a small abrasion on the left hand, back of the hand and fingers as near as I can remember. There were no abrasions or bruises on the back—no skin wound at all. Without an abrasion of the skin at all. Q. Has there been any change in the condition of his back from the end of say three months of the time of the injury? A. No. From then on the symptoms were subjective, what we call subjective symptoms to me. Nothing that demonstrates to anyone else,—unless there was a tenderness to the pressure. Q. (By the Court.) In your opinion, is the patient suffering continual pain now at the present time? A. Well, that, of course, is a subjective inference. I have no reason to think that he is,—that he does not feel weak and feel some sensation there. I do not know if it would be an out-and-out pain. . . . A long time after the injury I got an X-ray that shows that all the vertebrae is in line, of proper position; no evidence of bones having been broken."

Plaintiff also produced at the trial as a witness on his behalf Dr. E. W. Twitchell. In his brief counsel states that Dr. Twitchell's testimony was largely founded on hypothetical questions. But Dr. Twitchell at the trial testified that he had "made an examination of the plaintiff in this case—which extended for an hour or more. . . . I made what I believe was a very thorough examination. . . . To be frank, I am not able to state exactly what is the matter with his back. I have examined him carefully, but I was not able to make any definite finding, that is, rather nothing which evidenced any anatomical changes—anything which I could demonstrate to anybody else. Q. You found no condition which indicated that there had been an injury to his back? A. No. If he had come to me, if a person, like anybody and said nothing to me, and I examined him, after I got through, I would not be positive sure there was anything wrong with him. . . . I found no deformity, no anatomical changes; no swellings, no bruises; no scars. . . . No apparent injury to the muscles or nerves." On behalf of the defendant, Dr. C. B. Jones testified that as the result of an examination of the appellant at the time of the trial: "I found the man extremely well developed muscularly, so far. as the movements are concerned of the body. Every joint seems to be an absolute normal movement. The spinal column is movable in every direction, twisting and bending. Bends backward and forward, both lateral movements. The muscularity of the spinal column is more or less sensitive; he holds it in tension considerably. By directing his attention to other parts, I was able to get him to relax the muscles. They relaxed the same as a normal back. Just as he was bending forward, leaning over in the position the muscles tightened up, he could not relax, did not relax himself. In moving other parts of his body, the muscles that were held tense became relaxed giving perfect movement of the spinal cord. In manipulating the spinal column by the hands, I could find no displacement of the vertebrae, the vertebrael column itself. I could get extreme bending in the lumbar region and in the cervical region,—those two movements of the spinal cord. . . . I watched the man as he walked; I saw no limping or lameness of any character which sustains my conclusion of my examination. . . . I found no chronic sign. This indicates there is an absence of inflammatory condition of the spinal cord." Dr. Jones was then asked

by respondent's counsel a hypothetical question framed by
the plaintiff's attorney and based upon a large number of
subjective symptoms narrated by the plaintiff as a part of
his testimony, such as the violent and terrific character of the
collision, his suffering great pain in the small of his back, his
inability to walk at all for two weeks and his ability for the
ensuing three months to walk only with great difficulty and
with great pain and the continued existence of this pain and
weakness in the back, and his inability to bend his back either
forward, backward, or sidewise without severe pain and suf-
fering, his inability to walk except very slowly and for short
distances and with great pain, etc. Assuming these condi-
tions to exist, the doctor stated that he would "expect him
to be suffering from an injury to the back. Q. Taking, now,
the basis of this hypothetical question, and add to it the
further facts that after a physical examination of the back
there were no physical signs of injury. No physical signs
of any injury to the bones or muscles, what, then, would
be your opinion as regarding the nature of this injury?
A. From my examination I would term the condition as I
find there is what we call traumatic spine. If he was hurt in
a railroad accident, they would call it a railroad spine. It
is an indefinite injury in which it is impossible to find any
spot or definite lesion. The characteristics of these injuries
are, the fact is there is a psychic condition as well as the
injury. Of course we know that a man that is injured, we
know that condition has something to do—there is a psychic
condition,—the mental attitude mixed with the injury. From
my past experience, and from the history of such cases, and
the authorities which we go by, we find that individuals of
this character are cured, either by receiving a certain amount
or sum for their injury, or else by not receiving a certain
amount. When they find out they cannot, there is no further
recourse for them, they will go back to ‘work, either imme-
diately or very shortly afterward and be cured of their in-
juries.'' Furthermore, Dr. Twitchell, plaintiff's own witness,
testified: ''I regard him [plaintiff] as a man of what we call
a neurotic type, that is rather characteristic of his nationality
—he is from a province in Russia, a province, a country where
I am in the habit of seeing that decided mental action,—is
due to shocks of any sort, mental and physical shocks. Q. Is
that condition such that, after this suit is over, he will im-

prove? A. I should say that a suit of this kind would have a very profound impression upon an individual of his type, that is to say, genuinely affects his condition without any connivance on his part. Q. Is the condition such a condition that after this suit is over he is very liable to improve? A. That would depend likewise on the conditions; if the court disappointed him, he would be that sort of an individual who would be very much disappointed,—gross disappointment, that sort of thing. Q. Doctor, so far as you are able to discover, there is nothing in his injury, physical condition, that would cause him to get worse as a result of his injury, it would be more the result of his disappointment? A. Yes, I should say so. I would not expect him to get worse because of the condition, on account of his physical condition, so much as I would on account of the other.''

There is nothing in the record to justify or warrant appellant's charges that the plaintiff did not have a fair trial as a result of bias or prejudice on the part of the court or that the record discloses any bias or prejudice. In asking questions of the witness the court acted with a due and proper sense of the responsibility cast upon him by the duty of his office to try the case according to all the evidence available to him from the witnesses on the stand. There is no evidence to show that by any act or conduct of the judge the witnesses were coerced or attempted to be coerced into telling anything except what they believed to be the truth. The findings attacked were therefore not contrary to the evidence and the judgment is therefore affirmed.

Burnett, J., and Hart, J., concurred.